## ANDERSON & AL. *vs.* BROCK.

The deacons of the societies of Shakers are capable of taking and holding lands in succession, within the meaning of *Stat.* 1785, *ch.* 51, and *Stat.* 1821, *ch.* 135.

In trespass *quare clausum,* the plaintiffs were permitted to amend their writ, which charged the defendant for an injury to their own property, by setting forth that they sued as deacons and overseers of a society of Shakers.

In trespass *quare clausum,* by the deacons of a society of Shakers for an injury to the common property, the members of the same society are competent witnesses, on releasing to the plaintiffs their interest in the action, and receiving releases from the plaintiffs of all obligation to contribute to the costs of the suit.

THIS was an action of trespass for breaking the close of the plaintiffs, who styled themselves, in the original writ, " *John An-derson* and *Isaac Bracket,* both of *Alfred,* yeomen." After the cause came into this Court, the plaintiffs moved for leave to amend their writ, by adding that they sued " as deacons and over-" seers of the society of shakers in said *Alfred,*" which was granted, though objected to by the defendant.

At the trial, which was before the Chief Justice, upon the plea of soil and freehold in the defendant, the plaintiffs offered as witnesses certain members of the same society of shakers of which they were deacons; to whose admission the defendant objected, on the ground of their alleged interest in the event of the suit, it being one of the articles of their association that " the " members should possess one joint interest" in all the temporalities of the church, and should be equally entitled to the use of the common property according to their several necessities;—but upon the witnesses executing in Court a release to the plaintiffs of all their interest in this action, and in the damages which might be recovered in it, and the plaintiffs executing to them a release from all obligation to pay any costs which the defendants might recover against the plaintiffs in this action;—they were admitted to testify.

The plaintiffs then read a deed from *Barbara Brown* to *Gowen Wilson, Joshua Harding,* and *Jonathan Nowell,* styled deacons or overseers entrusted with the care and management of the estate and temporal interest of the family of shakers in *Alfred,* convey-

ing the *locus in quo* to them and their successors and assigns in trust for said family or society, for the support of the gospel among them, the relief of the poor, and their common support, and for other pious and charitable uses;—and then shewed from the records of the society, that the plaintiffs were their regular successors.

The defendant contended that the title did not pass to the plaintiffs by this deed and by such succession;—and further objected that the plaintiffs had no right to maintain the action at this time, because it appeared by the book of records of the society, that while this action was pending, *John Anderson* had resigned the office of deacon, and others were appointed in his stead.

Both these objections were overruled by the Chief Justice, and a verdict, under his instructions, was returned for the plaintiffs, subject to the opinion of the Court.

*Shepley*, for the defendant, objected first to the amendment of the writ, which he said wholly changed the nature of the action, and was therefore inadmissible. It stood on a cause of action accrued to the plaintiffs in their own right, to which their executors would succeed as privies; but it was now changed to a title *en autre droit*, the interest in which would pass to their successors in office. *Haynes v. Morgan* 3 *Mass.* 210.

As to the witnesses,—they had a direct interest in the cause of action, being joint owners of the common fund, which would be increased or diminished by the result of this suit, and which their releases did not affect. Nor could the plaintiff's release discharge their pecuniary liability to contribute to the expenses of the suit, for this the plaintiffs had no power to do. At most it was but a private undertaking of the plaintiffs to indemnify them; but cannot operate to discharge them from the common obligation to contribute to the common burthens. The principle of a community of interests and rights and liabilities, enters deeply into, and pervades the foundations of the religious faith of this society, and cannot be eradicated. Each witness, whether he executes a release or not, is still a member of the family, and entitled to a support from the common stock; and if the suit is unsuccessful, that support is to be derived from a diminished fund.

The resignation of *Anderson*, he contended, ought to abate the suit, there being no provision by law for his successor to come in and prosecute it.

But he insisted that the deacons or overseers of the shakers were not a corporation within the statute respecting grants to charitable uses, and so were incapable of taking in succession. There can be no church, without a parish; and as the shaker societies do not assume parochial forms, their deacons are not within the terms of the law, not being deacons of any *churches*. *Boutelle v. Cowdin* 9 *Mass.* 254. Further, in the construction of that statute, the intent of the legislature is to be gathered from the state of facts as they existed when the law was enacted; but at *that time* no such people as shakers were known; and the quakers or friends, so far from being objects of the fostering care of the government, were the subjects of its severest animadversions. It is not therefore to be supposed that the legislature would grant any new capacities to the officers of a people whom they were endeavoring to banish from the Commonwealth.

*J. Holmes* and *Goodenow* for the plaintiffs.

As to the amendment, they said that it did not affect the action, which still remained the same as before ; it only designated the character in which they claimed damages and the persons to whom they were accountable. If they are compellable to account, they are trustees, and therefore are rightly described in the writ. If not, they are entitled to damages in their own right. But either way, it was of no importance. *Kincaid v. Howe* 10 *Mass.* 203. *Leighton v. Leighton* 1 *Mass.* 433. Besides, the granting of leave to amend is a discretionary act of the Judge, preparatory to the trial, and not during its pendency ; and if improperly exercised, it is not open, in *this* form, to the defendant's objection, within the meaning of the statute. *Haynes v. Morgan* 3 *Mass.* 208.

As to the witnesses ;—it would be strange if any persons could place themselves in such relations to each other as could not be changed even by themselves. Here they have executed mutual releases. If an agent acting for two persons release to one of them, he devolves no increased responsibility on the other ; but

only assumes it himself;—and thus the rights of the plaintiffs against the society, remain now, as they were before, unaffected by the release.   But independent of the releases, there exists no compulsary power to enforce a contribution in the case. The *covenant*, by which all shakers are bound to each other, and which forms a part of this case, contains an express stipulation that the parties shall never resort to legal remedies against the society or its members.   It is a perpetual bar, containing a formal surrender of their legal rights, and retaining a hold only on the consciences and religious principles of the parties.   This also is consistent with law.   All donations to the shakers and all the fruits of their common industry are expressly consecrated to eleemosynary purposes ; and none but the *donors* can compel an execution of the trust.   They are gifts in trust for the poor; but in such cases it is well known that no action lies, except by the donor or his heirs.   *Wells v. Lane* 8 *Johns.* 462.

Nor can the resignation of *Anderson* affect the suit.   No case has been cited to shew that his successors may not come in and prosecute the suit to judgment.   But if they cannot, yet he may, for his resignation of the office ought not to be taken as an abandonment of a cause then pending.

The argument against the capacity of the plaintiffs to take by succession, they contended was not founded in law.   Whatever may have been the severities exercised against this description of people when the law of *Massachusetts* was enacted, the principle in *Maine* is that of universal toleration.   Every association of christians for religious purposes is recognized as a church ; and its presiding officers are made capable of taking in succession.   *Const. of Maine, bill of rights, art. 3.    Stat.* 1821, *ch.* 42, *sec.* 1, and *ch.* 135, *sec.* 10.   And if it were not so, yet here is a conveyance in trust, to certain individuals and their successors ; and who these successors are, is a fact susceptible of proof as any other matter *en pais.*   In this view of the case they may take as trustees at common law.   *Newhall v. Wheeler* 7 *Mass.* 179.

WESTON J. at the succeeding term in *Kennebec* delivered the opinion of the Court as follows.

By the fourth article of the declaration of rights in the constitution of *Massachusetts*, it is provided that "every denomination of

christians, demeaning themselves peaceably, and as good subjects of the commonwealth, shall be equally under the protection of the law." The statute of 1785, *ch.* 51, for the better securing and rendering more effectual grants and donations to pious and charitable uses, doubts being entertained how far such grants could go in succession, provided that the deacons of all the several protestant churches, shall be deemed so far bodies corporate, as to take such grants, whether of real or personal estate, in succession. The spirit and object of this act, as well as the provision of the constitution before cited, require that it should receive a liberal construction, for the benefit of every sect and denomination of protestant christians.

A church, separate from the society with which it is connected, has not the rights and privileges of a corporation. It is however a body, having a distinct existence and character, in our ecclesiastical history and usages, and as such is recognized by the law. Although it does not enjoy the attributes of a corporation, yet having a well established identity, it was quite within the scope of legislative power to constitute certain of its officers, also equally well known, by the name of their office, a corporation, and to endow them with power to take estates, real and personal, in succession; and also with a capacity to sue and defend all actions touching the same. This latter power, which the statute before cited expressly gives, designates a body sufficiently tangible and responsible, in relation to all questions which may be raised respecting all such grants and donations, as might be made to them in their official capacity. It is contended that the church, of which the plaintiffs are deacons, not being connected with any religious society, having a corporate existence, cannot be considered as embraced within the true intent and meaning of the act before referred to. A congregational church is a voluntary association of christians united for discipline and worship, connected with, and forming a part of some religious society, having a legal existence. Presbyterian, baptist, and methodist churches have generally the same character and connexion; as have probably the churches of many other denominations of christians. But religious toleration, which is the vital principle of protestantism, and which is effectually secured by

the constitution and laws of our own State, as well as of that from which we have separated, has produced and is producing many modifications of discipline and doctrine, in bodies associated for spiritual and ecclesiastical purposes. The sect, with which the plaintiffs are connected, have been for some time known among us, and their peculiar tenets and modes of discipline have been embodied and settled by their teachers in regular, and among them, well established forms. Although once persecuted by the mistaken zeal of former days, they are now permitted, under more favorable auspices, to keep the peaceful tenor of their way, unmolested. They are in general quiet, sober, and industrious ; and the fruits of these commendable qualities are exhibited to the public eye, in their beautiful villages and cultivated grounds, and in the apparent comfort and abundance, with which they are surrounded.

If the persons, who acquire authority and influence among them, should be found to abuse their power, they are answerable both civilly and criminally, for their misconduct. Like all other citizens, they are amenable to the laws, by which they are protected ; and from obedience to which their seclusions afford them no immunity or exemption.

On the whole, upon a sound and liberal construction of the act of *Massachusetts*, under which the donation in question was made, considering also the spirit of the constitution of that commonwealth upon the subject of religion, we do not perceive any sufficient reason for withholding from the deacons of churches of the religious sect or denomination called shakers, the privileges and immunities granted by that statute. But if in fact doubts might be fairly raised and entertained upon this point, we are not disposed to sustain objections made by the defendant, who has exhibited no title or interest in himself, to the official character and authority of the plaintiffs, unless they are already and fully supported by law.

The constitution of our own State is not less liberal and tolerant, upon the subject of religion, than that of *Massachusetts* ; and in the third section of our declaration of rights, there is secured to religious societies, unincorporate, the right of electing and

maintaining their own teachers. Thus religious societies, unincorporate, are recognized as having a legal existence, for very important purposes. By the tenth section, chapter 135 of the revised statutes, " the deacons, elders, trustees, stewards, or other presiding officers of every church or religious society, having by its usages no settled minister, shall be deemed capable of taking *in succession* any estate granted to them to the use of such church, or of the poor thereof; and of prosecuting and defending all actions, petitions, and processes touching the same." We can discern no good reason, why the case of the plaintiffs is not fairly within the provisions and protection of this statute.

As to the amendment objected to, if the plaintiffs were rightfully in possession, although as trustees, it is by no means certain that they might not maintain an action of trespass against a wrong doer, declaring upon their own possession, without setting forth their official capacity. But we see no objection to the amendment. The cause of action remained the same. It exhibited more perfectly the title of the plaintiffs; and the nature and character of their seisin and possession, and is supported by the case of *Leighton v. Leighton,* cited by their counsel.

The interest of the witnesses must be considered as legally extinguished by the mutual releases, so as to restore their competency, if they were before incompetent. It is difficult to conceive any interest, going to the competency, which may not be thus removed. If notwithstanding the witnesses still expect some advantage or benefit from the result, which they could not legally enforce, it is an objection to their credibility. The plaintiffs have no authority, by the release by them executed to the witnesses, to increase the burthens of the other members of the society; and to prevent this injustice, they might be deemed to have assumed themselves, by their release, the proportion of costs and expenditures, which the witnesses might otherwise have been holden to contribute.

With regard to the change in the office of deacons of this church, which appears in this report, we do not decide whether this objection might not have prevailed, had it been seasonably pleaded in abatement; but as the trespass complained of hap-

pened while the plaintiffs were rightfully in possession, we are of opinion that it did not constitute, at the time of the trial, a valid objection to their right to sustain this action.

The motion to set aside the verdict *is* not sustained, and judgment must be rendered thereon.